IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-02011-PAB

SAFI DARRELL DONA'T,

    Applicant,

v.

WARDEN CIOLLI, and
C/O BANUELOS,

    Respondents.

## ORDER

This matter is before the Court on the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Application") filed *pro se* by Applicant Safi Darrell Dona't on July 18, 2024.  Docket No. 1.  On September 13, 2024, Respondents were ordered to show cause why the Application should not be granted.  Docket No. 15.  On October 10, 2024, Respondents filed a Response to the Order to Show Cause.  Docket No. 19. Following the grant of an extension of time, on February 28, 2025, Mr. Dona't filed a Reply to the Respondents' Response to Order to Show Cause.  Docket No. 26.  After reviewing the pertinent portions of the record in this case, the Court concludes that the Application should be denied.

I.     **Background**

Mr. Dona't is a prisoner in the custody of the Federal Bureau of Prisons ("BOP"), currently incarcerated at the Florence ADMAX in Florence, Colorado.  Docket No. 1. On February 7, 2024, a BOP officer prepared an incident report charging Mr. Dona't

with the disciplinary offense of destroying property (a TV valued at $150) and possessing a non-hazardous tool "after it was discovered several screws had been removed and the cable hook ups were missing from the back side of his TV." Docket No. 19-1 at 7, 74-77. Mr. Dona't also had a prohibited charging cable "hidden in a bag." *Id*. The incident report was delivered to Mr. Dona't the next day, and Mr. Dona't "was advised of his rights regarding the disciplinary process at that time." *Id.* Mr. Dona't "did not provide any documentary evidence to the investigating Lieutenant, nor did he request any witnesses or a staff representative." *Id*. The Unit Discipline Committee ("UDC") processed the incident report, held a hearing, and ultimately referred the matter to a Discipline Hearing Officer ("DHO") "to assess the proper sanctions based on the severity of the charges." *Id.* at 8. On February 9, 2024, Ms. Dona't was notified of the DHO hearing and was informed of his rights for the hearing. *Id.* at 8, 79.

Mr. Dona't waived his appearance at the hearing and waived his request for both a staff representative and witnesses. *Id.* at 8, 83-86. The DHO hearing was held on February 12, 2024. *Id.* at 83. Mr. Dona't was convicted of Destroying Property over $100. *Id.* at 8, 83-86. The DHO provided the following description of the specific evidence on which he relied:

> The DHO advised you of your rights before the Discipline Hearing Officer and you stated you understood those rights. You confirmed you did not request a staff representative or witnesses.
> . . .
>
> The DHO bases [the guilty] finding on the incident report writer[']s statement in Section 11 which states, "Inmate DONAT, SOFI, #37165-048 on 2/7/2024 at approximately 11:15 am after taking group 1 to outdoor recreation myself, Officer Baca and Officer Stevens went to conduct cell shakedowns. Upon entering inmate Donat, Sofi #37165-048 I located the inmate[']s TV next to

2

> the toilet in his cell. Upon further inspection of the tv, I noticed the destruction of several screws and the cable hook ups missing from the back side of the tv. I located a white, clear plastic cup sitting on the ledge that had what appeared to be a homemade manufactured screwdriver, made out of an inmate white toothbrush with a small metal flat head melted to the toothbrush handle. The inmate tv is valued at $150.00. The inmate also had a charging cable from the tablet station hid in a bag that caused damage to the port charging station from being pulled from its connection. Upon further searching, I located a cut mp3 cable from the inmate computer station. The tablet cable cost is $4.59 + $29.99 port charger and the mp3 cable is $15.99. All these items are unauthorized to be in the inmate cell.
>
> The DHO noted you did not present any documentary evidence in your defense. When questioned by the investigating lieutenant you elected not to comment and when appearing before the UDC Chair, you admitted guilt. The DHO noted your decision to not comment at the DHO hearing. The DHO finds it reasonable to believe that should you be innocent of the charge you would have made efforts to defend yourself.
>
> Based on the great weight of evidence which includes the information outlined above, the staff members statement in section 11 and the fact that you did not present a defense at any time during this disciplinary process, the DHO finds you did commit the prohibited act of code 218 DESTR, ALTER OF LIFE SAFETY DEVICE.

*Id.* at 83-85.  Mr. Dona't was sanctioned with a loss of 27 days of good conduct time, a loss of commissary privileges for 90 days, loss of visits for 90 days, and ordered to be placed in disciplinary segregation for 15 days.  *Id.* at 85.  The DHO explained the reasons for the sanctions as follows:

> The action/behavior on the part of any inmate to possess or use a locking pick, or to tamper/block any locking device or destroying, altering, interfering with, improperly using, or damaging any security device, mechanism, or procedure, poses a serious security threat to the institution, as well as his own health, safety, and welfare. This action/behavior interferes with the ability of the staff to maintain the security of the institution, and the ensure the safety of the inmates and staff assigned to the institution. In the past, this type of action/behavior has prevented staff from saving lives or property from being destroyed. The sanctions imposed by the DHO were taken to let the inmate know that he, and he alone, will be held responsible for his actions/behavior at all times.

> The sanction of disallowance of Good Conduct Time (DIS GCT) was imposed to emphasize the seriousness of the offense and to enforce the standard that inmates be held accountable for their actions as well as to comply with mandatory sanctioning guidelines for inmates sentenced under the Prison Litigation Reform Act (PLRA).
>
> The sanctions for loss of commissary and visiting privileges were imposed to enforce the standard that inmates be held accountable for their actions as well as to comply with mandatory sanctioning guidelines for inmates but were as the DHO believes the sanctions will provide sufficient deterrence of future misconduct.
>
> The sanction of disciplinary segregation (DS) was imposed to emphasize the seriousness of the offense.

*Id*. A copy of the DHO report was delivered to Mr. Dona't on March 1, 2024. *Id.* at 86.

Mr. Dona't alleges in the pending habeas Application that he was denied due process because he did not receive photographs taken of the TV, used by the DHO, in determining Mr. Dona't's guilt. Docket No. 1 at 2, 4-5. Additionally, Mr. Dona't alleges that he should have been made aware of these photographs "at the outset of the charges when presented, and if a prisoner decides to waive the assistance of a staff Rep[resentative] it should not be 'sprung' on him at the hearing itself." *Id.* at 8-9. Mr. Dona't claims that he should have been advised that by waiving a staff representative at the hearing, he would not receive any evidence used against him. *Id.* Mr. Dona't also appears to challenge the cost of the TV. For relief, he requests that the Incident Report be expunged, that his 27 days of lost good-conduct time be restored, and that the Court find that "not being afforded evidence against you except through a staff representative is unconstitutional[.]" *Id.* at 4.

Respondents argue in opposition that Mr. Dona't's Application should be denied because (1) he waived his right to staff representation; (2) he received the required due process during the disciplinary proceeding; and (3) the "discipline was supported by 'some evidence.'"  Docket No. 19 at 1.  In his Reply, Mr. Dona't contends that since the evidence used against him "was not given to [him], nor was [he] made aware of any evidence against him" until after he was found guilty, this violates his right to due process.  Docket No. 26 at 4.  He also iterates that any waiver of staff representation should inform the prisoner that he will not receive any evidence used against him in the disciplinary process.  *Id.* at 4-6.

## II.   Standards of Review

The Court must construe Mr. Dona't's filings liberally because he is not represented by an attorney.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be an advocate for a *pro se* litigant.  *See Hall*, 935 F.2d at 1110.

An application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see also McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997).  Habeas corpus relief is warranted only if Mr. Dona't "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).

In the context of prison disciplinary proceedings, "[i]t is well settled that an inmate's liberty interest in his earned good time credits cannot be denied without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment." *Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir. 1996) (internal quotation marks omitted); *see also Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 811 (10th Cir. 2007) (citing *Mitchell* in the context of a federal prisoner challenging a prison disciplinary conviction). However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

> Where a prison disciplinary hearing may result in the loss of good time credits, . . . the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Superintendent v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563-67). Furthermore, "revocation of good time does not comport with the minimum requirements of procedural due process unless the findings of the prison disciplinary board are supported by some evidence in the record." *Hill*, 472 U.S. at 454 (internal citation and quotation marks omitted).

### III. Discussion

Mr. Dona't's Application is not a model of clarity. Liberally construing the Application, Mr. Dona't appears to contend: (1) he did not receive due process as required by BOP regulations; (2) his waiver of staff representation was unconstitutional because he was not allowed to receive or review photographs of the broken TV used by

the DHO in determining guilt; (3) the evidence used to find him guilty was insufficient; and (4) the veracity of the cost of the TV should be considered by the Court.  Docket No. 1.

### A. Failure to Comply with BOP Regulations

According to Mr. Dona't, he did not receive due process as required by BOP Program Statement 5270.09, Inmate Discipline Program.  Docket No. 1 at 2, 5-10.  However, Mr. Dona't is not entitled to relief on this claim based on the alleged failure to comply with BOP regulations applicable to inmate disciplinary proceedings.  "[A] failure to adhere to administrative regulations does not equate to a constitutional violation."  *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993).  Therefore, to the extent Mr. Dona't asserts his habeas claims solely on an alleged failure to comply with BOP policies and regulations, such claims lack merit.

### B. Waiving Staff Representative

Next, Mr. Dona't argues that he was not informed that, by waiving staff representation during the DHO hearing, he was not entitled to receive evidence that would be used against him in the DHO process, violating his due process rights.  Docket No. 1 at 2, 5-10.  Specifically, he argues that, notwithstanding his waiver of staff representation, the DHO should have informed him that photographic evidence would been used against him at the hearing and that he should have been allowed to view the photos.  *Id.*

These allegations do not amount to a denial of due process.  Here, there is no dispute that Mr. Dona't received advance written notice of the disciplinary charges.  Mr.

Dona't admitted guilt, waived his right to be present at the disciplinary hearing, waived his right to present witnesses, and waived his right to a staff representative.  Docket No. 19-1 at 73-86.  Program Statement 5270.09 C-N, Inmate Discipline Program, provides that the "inmate does not receive a copy of the investigation. . . .  However, if the case is ultimately forwarded to the DHO, the DHO must give a copy of the investigation and other relevant materials to the inmate's staff representative, if requested, for use on the inmate's behalf."  *Id.* at 31.  Also, the specific due process requirements of *Wolff* do not provide that a prisoner is entitled to staff representation during a disciplinary hearing.  *See Jordan v. Wiley*, 411 F. App'x 201, 209 (10th Cir. 2011) (holding prisoner had no viable due process claim about the quality of assistance received from a staff representative during a disciplinary hearing because an inmate only has a due process right to receive assistance from a staff representative where the inmate is illiterate or the issue is so complex that it is unlikely that the inmate will be able to collect and present the necessary evidence).

Additionally, Mr. Dona't does not allege that, because he was unable to view photographs of the TV, he was unable to marshal a defense.  As noted above, Mr. Dona't waived both his right to be present at the hearing and to call witnesses.  Further, there is no due process right requiring an inmate to be able to view photographic evidence prior to or during a disciplinary proceeding.  As a result, there is no merit to Mr. Dona't's claim that he was denied due process related to his waiver of staff representation.

### C. Sufficiency of Evidence

To the extent Mr. Don't argues that the evidence presented did not justify a finding of guilt, the due process requirements for a prison disciplinary hearing require that a DHO's findings are supported by "some evidence" in the record.  *See Hill*, 472 U.S. at 454.  "Ascertaining whether [the 'some evidence'] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id*. at 455-56.  "A disciplinary board's decision can be upheld by a reviewing court 'even if the evidence supporting the decision is meager.'" *Howard v. U.S. Bureau of Prisons,* 487 F.3d 808, 812 (10th Cir. 2007) (quoting *Mitchell v. Maynard,* 80 F.3d 1443, 1445 (10th Cir. 1996)).

Here, as stated in the DHO Report, the DHO relied on evidence of the incident report writer's statement, Mr. Dona't's admission of guilt to the UDC Chair, the fact that Mr. Dona't did not present a defense during the disciplinary process, and a review of photographs of the TV.  Docket No. 19-1 at 83-86.  This satisfies the due process requirement that the DHO's findings be supported by some evidence in the record. Further, Mr. Dona't's suggestion that the photographs would have "corroborated the issue I raised on appeal" does not demonstrate he is entitled to habeas relief. Docket No. 1 at 6.

### D. The Value of the Damaged TV

Finally, Mr. Dona't alleges that he is being overcharged for both the damaged TV and a replacement TV. He contends that the cost of the TV is "only [$]75.00," but the hearing officer is charging him for "two (2) televisions: the broken one, and a replacement." Docket No. 1 at 9-12. These allegations do not change the outcome of this habeas action. First, Mr. Dona't provides no evidence that the cost of a replacement inmate TV is $75.00. Also, the Incident Report and the DHO report provided to Mr. Dona't specifically state that the "inmate tv is valued at $150.00." *Id.* at 74-88. Mr. Dona't was provided notice of the value of the TV, and there is no evidence before the Court that Mr. Dona't objected during the disciplinary proceedings to this amount. Thus, these unsubstantiated allegations do not change the conclusion that Mr. Dona't was provided due process during the disciplinary proceedings.

### IV. Conclusion

Mr. Dona't was provided with advance written notice of the disciplinary charges, he was given an opportunity to call witnesses and present documentary evidence, the DHO provided a written statement of the evidence relied on and the reasons for the disciplinary action, and the determination of guilt was based on some evidence. Thus, for the reasons discussed in this order, Mr. Dona't is not entitled to habeas relief and the Application will be denied. Accordingly, it is

**ORDERED** that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Docket No. 1], filed by Applicant Safi Darrell Dona't on July 18, 2024, is **DENIED** and this case is dismissed. It is further

**ORDERED** that Mr. Dona't's Motion to Grant Default Judgment [Docket No. 27] is **DENIED as moot**.  It is further

**ORDERED** that leave to proceed *in forma pauperis* on appeal is denied.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith.  *See Coppedge v. United States*, 369 U.S. 438 (1962).  If Applicant files a notice of appeal he must also pay the full appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

DATED May 27, 2025

BY THE COURT:

PHILLIP A. BRIMMER
Chief United States District Judge